DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Adams County Common Pleas Court, Juvenile Division, judgment that awarded Adams County Children Services (ACCS) permanent custody of M.C., born April 25, 2000, J.C., Jr., born July 23, 2003, and N.C., born February 6, 2005.
 {¶ 2} Appellant John Conley, the children's natural father, raises the following assignment of error:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT JOHN CONLEY, SR., IN AWARDING *Page 2 
PERMANENT CUSTODY OF APPELLANT'S THREE MINOR CHILDREN TO ADAMS COUNTY CHILDREN SERVICES."
 {¶ 3} ACCS became involved in the mother's and the father's lives due to their repeated drug abuse. On February 5, 2004, ACCS filed complaints and alleged M.C. and J.C. to be dependent children. On April 23, 2004, ACCS filed an ex parte motion and requesting temporary custody of the children because the mother was incarcerated at the Adams County Jail and the father was incarcerated at the Brown County Jail. The trial court granted ACCS temporary custody of M.C. and J.C. and the parents subsequently admitted the dependency allegation.
 {¶ 4} On May 9, 2005, ACCS filed a complaint and alleged N.C. to be a neglected and dependent child. On that same date, the trial court granted ACCS temporary custody of the child. On August 15, 2005, the court adjudicated the child dependent and neglected.
 {¶ 5} On February 2, 2006, the mother requested a six month continuance so that she could complete the Stepping Stones program and then enter a transitional program and "intensive out patient classes at The Counseling Center here in Portsmouth." She stated she would attend GED classes at Shawnee State and find employment. She also registered for public housing and was placed on the waiting list for a three bedroom apartment. The trial court continued the matter until August 15, 2006.
 {¶ 6} On July 6, 2006, ACCS requested permanent custody of the three children. ACCS asserted that the agency had been working with the parents for several years (M.C. and J.C. have *Page 3 
been in its custody since April 26, 2004, while N.C. has been in its custody since June 15, 2005) and that neither parent had taken the steps necessary to enable the children to return home.
 {¶ 7} On December 12, 2006, the mother filed a motion to continue the January 4, 2007 permanent custody hearing because she was enrolled in an intensive drug rehabilitation program at the Franklin Pre-release Center in Columbus. She also stated that she was enrolled in parenting and family skills training programs and that if she successfully completed the program, she would be released in March. If, however, she missed a certain number of treatment dates, she would be ejected from the program and would serve her original two-year mandatory sentence. Thus, she contended that if she attended the permanent custody hearing she would be terminated from the program.
 {¶ 8} On January 4, 2007, a "circumstances of permanent surrender" was filed indicating that the mother would like to terminate her parental rights. Also, the guardian ad litem filed a report and recommended that the court award ACCS permanent custody. He stated that he interviewed an ACCS caseworker and the children's parents. He did not, however, speak with the children "as it is apparent that the children are too young to make any rational decisions regarding their own custody." The guardian ad litem stated "it seems that the natural parents of these children have expressed no genuine desire to be parents of these children. [They] have had ample opportunity to visit with the children but have failed to do so. [The father] has declined *Page 4 
to exercise any visitation with the children, by his own admission, and has failed to comply with the case plan by failing several drug tests. He is currently incarcerated in the Adams County Jail on felony charges. [The mother] is currently serving a sentence in state prison and has not complied with the case plan on several levels. To place the children in the hands of these parents would be jeopardizing the lives and health of the already fragile children."
 {¶ 9} On January 4, 2007, the trial court held a hearing to consider the permanent custody motion. Because the mother was incarcerated and did not wish to attend the permanent custody hearing for fear of termination from the drug rehabilitation program, the court heard the mother's testimony via telephone. She stated that she did not want to voluntarily surrender the children and claimed that she would be released in March if she successfully completed the drug rehabilitation program.
 {¶ 10} ACCS caseworker Kristi Maynard testified that since the children were removed from the parents' custody, neither parent successfully completed the case plan goals of remaining drug-free and providing a stable home. She stated that in the nearly three years that ACCS had temporary custody of the two older children and the year and one-half that it had custody of the younger child, it had not been able to place the children in the parents' care. She explained that the mother was in-and-out of the Stepping Stones program and was unable to remain completely drug-free. Furthermore, as of the permanent custody hearing date both *Page 5 
parents remained incarcerated.
 {¶ 11} On January 30, 2007, the trial court awarded ACCS permanent custody. The court found that: (1) the parents have had ACCS's assistance since October of 2003; (2) ACCS had temporary custody of M.C. and J.C. for approximately thirty-two months and of N.C. for approximately eighteen months; (3) the mother had not visited with the children since July of 2006, when she was incarcerated; (4) the father had not visited with the children since August of 2006; (5) a relative placement is not available; and (6) the children's need for a legally secure placement could not be achieved without a grant of permanent custody. The court additionally found that the children could not be placed with either parent within a reasonable period of time. The court also determined that the parents have continuously and repeatedly failed to remedy the problems that led to the children's removal: (1) they had a continued pattern of drug abuse; (2) neither parent completed parenting skills training; (3) the parents display chronic chemical dependency which created an inability to provide an adequate home for the children; and (4) both parents have been repeatedly incarcerated which prevented them from providing necessary care for the children. The court found that the parents' actions displayed an unwillingness to provide basic necessities for their children. Consequently, the court determined that a permanent custody award will serve the children's best interests. This appeal followed.
 {¶ 12} In his sole assignment of error, appellant asserts that *Page 6 
the trial court erred by awarding ACCS permanent custody of the children because permanent custody is not in the children's best interests, that "reunification was still a viable alternative," and that the court should have placed the children with the maternal grandmother. We disagree with appellant.
 "A APPELLATE STANDARD OF REVIEW {¶ 13} Initially, we note that an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re Perry, Vinton App. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶ 40, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Thus, our review of a trial court's permanent custody decision is deferential. See In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶ 17. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to *Page 7 
view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, In re Christian, Athens App. No. 04CA10, 2004-Ohio-3146.
 "B STANDARD FOR GRANTING PERMANENT CUSTODY {¶ 14} A trial court may not grant a permanent custody motion absent clear and convincing evidence to support the judgment. The Ohio Supreme Court has defined "clear and convincing evidence" as:
 "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, Schiebel, 55 Ohio St.3d at 74. In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, *Page 8 55 Ohio St.3d at 74.
 C PERMANENT CUSTODY PRINCIPLES {¶ 15} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599;In re Murray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169; see also,In re D.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. See D.A.. at ¶ 11. A parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100, 106,391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when a child's best interest demands such termination. D.A., at ¶ 11.
 {¶ 16} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial *Page 9 
court should consider the underlying principles of R.C. Chapter 2151:
 (A) To provide for the care, protection, and mental and physical development of children * * *; * * *
 (B) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
 D PERMANENT CUSTODY FRAMEWORK {¶ 17} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody *Page 10 
would further the child's best interests.
 {¶ 18} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. See, e.g., In re Billingsley, Putnam App. Nos. 12-02-07 and 12-02-08, 2003-Ohio-344; In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205; In re Dyal (Aug. 9, 2001), Hocking App. No. 01CA11. Consequently, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the only other consideration becomes the child's best interests. A trial court need not conduct an R.C. 2151.414(B)(1)(a) analysis of whether the child cannot or should not be placed with either parent within a reasonable time. Dyal; see, also, In re Berkley, Pickaway App. Nos. 04CA12, 04CA13, and 04CA14, 2004-Ohio-4797, at ¶¶ 61.
 {¶ 19} In interpreting R.C. 2151.414(B)(1), the Ohio Supreme Court held that the child must have been in the custody of the agency for at least twelve of the previous twenty-two months before the agency files a permanent custody motion in order for the trial court to grant permanent custody based on R.C. 2151.414(B)(1)(d) grounds. In re C.W.,104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, at ¶ 26. "In other words, the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12- *Page 11 
month period set forth in R.C. 2151.414(B)(1)(d)." Id.
 {¶ 20} In the case at bar, the record reveals that M.C. and J.C. were in ACCS's custody for more than twelve months of a consecutive twenty-two month period. The trial court adjudicated M.C. and N.C. dependent on August 18, 2004. For purposes of R.C. 2151.414(B)(1)(d), a child is considered to enter "the temporary custody of an agency on the earlier of the date the child is adjudicated [neglected, dependent, abused, or delinquent] * * * or the date that is sixty days after the removal of the child from the home." R.C. 2151.414(B)(1). Thus, when ACCS filed its July 2006 permanent custody motion, M.C. and J.C. had been in its custody for almost two years, which exceeds twelve months of a consecutive twenty-two month period. Consequently, in the case sub judice the trial court was not required to find that M.C. or J.C. could not be returned to either parent within a reasonable time.
 {¶ 21} Additionally, the trial court adjudicated N.C. dependent on August 15, 2005, and ACCS removed him from the home on May 9, 2005. Sixty days following his removal would be July 9, 2005. Thus, when ACCS filed its July 2006 permanent custody motion, N.C. had not yet been in its temporary custody for twelve or more months out of a twenty-two month period. Therefore, we must consider whether the evidence supports the court's finding that N.C. could not be returned to either parent within a reasonable time.
 E *Page 12 REASONABLE TIME {¶ 22} R.C. 2151.414(E) requires the trial court to consider "all relevant evidence" and sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. See R.C. 2151.414(B)(1)(a). If a court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 (3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent *Page 13 
custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 (6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.23, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 * * * *
 (12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 (15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03
of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 (16) Any other factor the court considers relevant.
 {¶ 23} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable *Page 14 
time upon the existence of any one of the above factors. We emphasize that the existence of a single factor will support a finding that a child cannot be placed with either parent within a reasonable time. SeeIn re William S. (1996), 75 Ohio St.3d 95, 661 N.E.2d 738; In reHurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 24} In the case at bar, the trial court determined that none of the children could be returned to either parent within a reasonable amount of time because of the parents' lengthy history of drug abuse and their refusal to successfully complete drug treatment programs, despite ample opportunity to do so. The court found that the parents repeatedly and continuously failed to remedy the conditions that led to the children's removal. The court additionally found that the parents' refusal to correct their drug addiction problems led to their inability to provide an adequate home for the children, which in turn demonstrated an unwillingness to provide an adequate home for the children. We believe, after our review of the record, that the record clearly and convincingly supports the trial court's findings that none of the children can be returned to either parent within a reasonable time.
 {¶ 25} Appellant's argument that the mother could regain custody of the children within a reasonable time is unavailing. He asserts that she will be released from incarceration upon completion of the drug program. However, whether the mother successfully completes the program is speculation. Furthermore, *Page 15 
as the trial court noted, the parents have an extensive history of drug abuse and have to failed to cure that abuse, despite ACCS's involvement. The court found that the parents' past history is a better indicator of their ability to comply with drug treatment programs than their stated desires to become drug-free and regain custody of the children. Thus, the trial court is not required to deny ACCS's permanent custody motion simply based upon the groundless speculation that the mother might successfully complete her drug treatment, be released from prison, find adequate housing for the children, and remain drug-free.
 F BEST INTERESTS {¶ 26} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests would be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors *Page 16 
listed under R.C. 2151.414(E)(7) to (11) apply.[1] *Page 17 
 {¶ 27} In the case at bar, ample competent and credible evidence supports the trial court's finding that permanent custody serves the children's best interests. With respect to the first factor, the children's interactions and interrelationships, the ACCS caseworker stated that the children are well-adjusted to their current foster homes. The caseworker stated that the mother and father interacted appropriately with the children during visitation, but that they have not been able to maintain a stable environment for the children. Regarding the second factor, the children's wishes, the children, due to their tender ages, did not express their own wishes, but the guardian ad litem recommended that the court award ACCS permanent custody.
With respect to the third factor, the children's custodial history, M.C. and J.C. have been in ACCS's temporary custody for over two years. J.C. has spent the majority of his life out of his parents' custody. N.C. was removed from his parents' care when he was an infant and has not been returned to his parents' custody. While the children have experienced some shuffling *Page 18 
among foster homes, ACCS has placed them in relatively new foster homes in which the children seem well-adjusted. Regarding the fourth factor, the children's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody, the evidence shows that the children need a legally secure permanent placement. Here, the children lacked a legally secure permanent placement and obviously had a need for one. The parents, at the time of the permanent custody hearing, were incarcerated and had no viable permanent placement for the children. Also, the court concluded that no relative placement is available. Because neither parent had an appropriate home for the children, the trial court properly determined that the children could not achieve a legally secure permanent placement without a grant of permanent custody. With respect to the fifth factor, whether R.C. 2151.414(E)(7) to (11) apply, because the trial court did not make a specific finding, we decline to consider this factor.
 {¶ 28} In conclusion, a balancing of the best interests factors reveals that a permanent custody award serves the children's best interests. The parents, while they undoubtedly love their children, have been unable to provide them with appropriate care and basic necessities. The children deserve more. Through the permanent custody award, their basic needs will be met. Consequently, we disagree with appellant that the evidence does not support the court's finding that awarding ACCS permanent custody serves the children's best interests. *Page 19 
 G RELATIVE PLACEMENT {¶ 29} Appellant further argues that the trial court erred by failing to grant custody to the maternal grandmother. We disagree.
 {¶ 30} In a dispositional hearing, a trial court considering a permanent custody motion possesses the discretion to award legal custody to either parent or to any other person who files a motion requesting legal custody. See R.C. 2151.353(A)(3); In re Evans (Feb 2, 2000), Summit App. No. 19489; In re Patterson (1999), 134 Ohio App.3d 119,730 N.E.2d 439; In re Benavides (May 3, 2001), Cuyahoga App. No. 78204. However, the statute does not require a juvenile court to consider relative placement before it grants a permanent custody motion. SeeIn re Perry, supra; In re Knight (Mar. 22, 2000), Lorain App. Nos. 98CA7258 and 98CA7266. In other words, a juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request. Id. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law, and the willingness of a relative to care for the child does not alter the statutory factors to be considered in granting permanent custody. See In re Jefferson (Oct. 25, 2000), Summit App. Nos. 20092 and 20110;In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124. Rather, a juvenile court is vested with discretion to determine what placement option is in the child's *Page 20 
best interest. See Patterson; Benavides. Generally, a child's best interests are served by placement in a permanent situation that fosters growth, stability, and security. In re Adoption of Ridenour (1991),61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. See In re Poke, Lawrence App. No. 05CA15, 2005-Ohio-5226; In reKeaton, Ross App. Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210; see, also,In re Lewis, Athens App. No. 01CA20, 2001-Ohio-2618; In reWilkenson, (Oct 12, 2001), Hamilton App. No. C-010402, C-010408.
 {¶ 31} In the case at bar, the trial court determined that placing the children with the maternal grandmother was not a viable option. The testimony revealed that the grandmother was not committed to keeping the children on a long-term basis and stated that she could not keep the youngest child, N.C. Furthermore, ACCS stated that it removed the children from the grandmother's care due to medical concerns. Thus, we believe that the trial court did not err by refusing to place the children with the maternal grandmother.
 {¶ 32} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that *Page 21 
appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McFarland, P.J. Kline, J.: Concur in Judgment Opinion
[1] R.C. 2151.414(E)(7) to (11) provide as follows:
 (7) The parent has been convicted of or pleaded guilty to one of the following:
 (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412
[2151.41.2] of the Revised Code
 (10) The parent has abandoned the child.
 (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child. that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense; *Page 1