[Cite as *In re A.M.L.*, 2013-Ohio-2277.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| A.M.L. | : | CASE NO.  CA2013-01-010 |
| | : | O P I N I O N<br>6/3/2013 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2011-0109

Fran Sweeney, 7723 Tylers Place Boulevard, #129, West Chester, Ohio 45069-4684, Guardian Ad Litem

Amy R. Ashcraft, 240 East State Street, Trenton, Ohio 45067, for appellant

Michael T. Gmoser, Butler County Prosecuting Attorney, Nicole Salinas, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

**M. POWELL, J.**

{¶ 1}   Appellant, C.L. (Mother), appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter A.M.L. to the Butler County Department of Jobs and Family Services (the Agency).

{¶ 2}   Mother was 16 years old when her daughter was born in February 2009.  In February 2011, both Mother and her own mother (Grandmother) were drug tested while in

the juvenile court for a hearing on Mother's truancy charge and Grandmother's charge of contributing to the delinquency of a minor. Mother tested positive for marijuana; Grandmother tested positive for benzodiazepines.

{¶ 3} On March 3, 2011, the police and a life squad were dispatched to Mother's school: Mother "was passed out" in the classroom after taking a non-prescribed Xanax. That same day, following a home visit by the Agency to Mother's residence, A.M.L. was removed by the police after all three adults in the home (Grandmother, the child's maternal great grandmother (Great Grandmother), and the latter's boyfriend) appeared to be under the influence as their eyes were bloodshot and their speech was slurred. None of the adults knew of Mother's whereabouts. A.M.L. was subsequently placed with a foster family. She has lived with the foster family since her March 2011 removal.

{¶ 4} On March 4, 2011, the Agency filed a complaint alleging that two-year old A.M.L. was neglected and dependent. On March 25, 2011, the juvenile court adjudicated A.M.L. dependent (the Agency withdrew its neglect complaint) and awarded temporary custody to the Agency. A case plan was implemented to reunify Mother with her daughter. The case plan required Mother to complete a Substance Abuse Mental Illness assessment and follow all recommendations, obtain and maintain stable housing and income, and participate in a parenting program.

{¶ 5} On March 26, 2012, the Agency moved for permanent custody of A.M.L. A hearing on the motion revealed that during the 18-month period between the child's removal and the permanent custody hearing, Mother (1) tested positive for various drugs on numerous occasions, (2) was arrested and incarcerated several times, (3) was inconsistent in visiting her daughter, (4) completed a substance abuse assessment but subsequently refused to participate in, and failed to complete, any treatment program, and (5) failed to complete any parenting program. While Mother was finally living independently in her own

apartment, she was still unemployed. In her post-hearing report, the child's guardian ad litem (GAL) recommended that permanent custody be granted to the Agency.

{¶ 6} By decision filed on November 6, 2012, the magistrate found by clear and convincing evidence that A.M.L. had been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period, and that it was in the best interest of A.M.L. to grant permanent custody to the Agency. Mother filed objections to the magistrate's decision. On January 14, 2013, the juvenile court overruled the objections and affirmed the magistrate's decision.

{¶ 7} Mother appeals, raising two assignments of error. For ease of discussion, the two assignments of error will be addressed together.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY GRANTING THE BCCS'S MOTION FOR PERMANENT CUSTODY.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY.

{¶ 12} Mother argues that the juvenile court's decision granting permanent custody to the Agency was not in A.M.L.'s best interest and that such finding was against the manifest weight of the evidence.

{¶ 13} "Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards have been met." *In re E.P.*, 12th Dist. Nos. CA2011-07-126 and CA2011-07-129, 2011-Ohio-6225, ¶ 14, citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision regarding permanent custody is limited to whether sufficient credible evidence exists to

support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.).

{¶ 14} Pursuant to R.C. 2151.414(B)(1), a juvenile court must apply a two-part test in determining whether to terminate parental rights and award permanent custody to a children services agency. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors set forth in R.C. 2151.414(D).

{¶ 15} Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or, where the preceding factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c), and (d); *In re E.B.*, 12th Dist. Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 22. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re T.D.*, 12th Dist. No. CA2009-01-002, 2009-Ohio-4680, ¶ 15.

{¶ 16} In the case at bar, the juvenile court found A.M.L. had been in the temporary custody of the Agency for more than 12 months of a consecutive 22-month period as of the date the Agency filed its permanent custody motion. Mother does not dispute this finding. The record contains competent credible evidence supporting this finding. The second prong of the permanent custody test is therefore satisfied.

{¶ 17} Mother, however, disputes the juvenile court's finding that granting permanent custody of A.M.L. to the Agency was in the child's best interest. Specifically, Mother asserts that given her completion of a substance abuse assessment, the fact she was about to start the Adult Drug Court program, her bond with her daughter, and the magistrate's recognition (in Mother's words) that "Mother could possibly achieve the necessary traits and skills to provide permanency to the child," the juvenile court erred in granting permanent custody to

the Agency.[1]

{¶ 18} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing, the juvenile court must consider all relevant factors, including, but not limited to: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (c) the custodial history of the child, including whether the child has been in the temporary custody of a children services agency for 12 or more months of a consecutive 22-month period; (d) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 19} With regard to R.C. 2151.414(D)(1)(a), the juvenile court found that A.M.L. was two years old when she was removed from Mother's home and placed in foster care, and that she has been living with the same foster family for nearly 18 months. The court also found that A.M.L. is bonded with the foster family and doing well in their care. The foster mother testified that A.M.L. (1) is very comfortable in their home, (2) is bonded to the foster family, and especially to their nine-year-old son, (3) never mentions Mother at home, and (4) is not affected when a visit with Mother is cancelled. Following visitation with Mother, A.M.L. "transitions right back into the [foster] home fine." The foster mother indicated her family's desire to adopt A.M.L. if she was placed in the permanent custody of the Agency.

{¶ 20} Before A.M.L. was removed from Mother's home, both lived at various times

---

1. In his decision, the magistrate stated: "It might theoretically be possible for mother to address her drug dependency, learn appropriate parenting skills, obtain stable housing and income in order to provide for [A.M.L.]. However, mother has not demonstrated her interest [in] taking advantage of available services to address her needs and become an effective parent. Based upon mother's track record in this case, mother is not likely to remedy the issues which brought the case to the court in the first place."

with Grandmother or Great Grandmother. No evidence was presented as to A.M.L.'s relationship with Grandmother. No evidence was presented as to A.M.L.'s relation with Great Grandmother at the present time (before the removal, Great Grandmother and her boyfriend provided care for the child when needed).

{¶ 21} The juvenile court found that the interaction between Mother and her daughter during supervised visits "demonstrat[ed] a loving and nurturing bond." Mother testified that visitation always goes well, she has a very close relationship with A.M.L., and the two of them have a "mother daughter bond." The record indicates that following A.M.L.'s removal in March 2011, Mother consistently visited her daughter twice a week (two hours each time) until September 2011. Thereafter, Mother became inconsistent, visiting at first only once a week, and subsequently visiting every other week. Due to incarceration and her drug addiction, Mother missed her daughter's birthday in February 2012 and did not visit at all between March 16 and August 29, 2012. Mother visited A.M.L. twice right before the permanent custody hearing.

{¶ 22} With regard to R.C. 2151.414(D)(1)(b), the juvenile court did not conduct an in camera interview of A.M.L., but noted the GAL's recommendation that permanent custody be granted to the Agency.

{¶ 23} With regard to R.C. 2151.414(D)(1)(c), the juvenile court found that at the time of the permanent custody hearing, A.M.L. had been in the Agency's custody and in the care of her foster family for approximately 18 months.

{¶ 24} With regard to R.C. 2151.414(D)(1)(d), the juvenile court found that Mother had not complied with any of the requirements of the case plan, and that A.M.L.'s need for a legally secure placement could not be achieved without a grant of permanent custody to the Agency.

{¶ 25} As noted earlier, the case plan required Mother to complete a Substance Abuse

Mental Illness assessment and follow all recommendations, obtain and maintain stable housing and income, and participate in a parenting program. The parenting program started in July 2011. The juvenile court found that Mother (1) attended in-home lessons for the first five weeks but subsequently either canceled or missed seven in-home lessons, (2) was officially terminated from the program on October 31, 2011 after failing to respond to an earlier warning letter, and (3) has not completed any parenting program.

{¶ 26} At the time of the permanent custody hearing, Mother had been living independently in her own apartment for three weeks. This was the first time she was living on her own. Before that, when she was not incarcerated, she lived with either Grandmother or Great Grandmother. The juvenile court found that Mother had not paid rent yet. According to Mother, the landlord was "working with her" until she had a job. At the hearing, Mother was unemployed but testified a job was being held at a Taco Bell, where she would be able to schedule her work hours around her Butler County Felony Drug Court schedule in the event she was accepted into the program. The juvenile court found that Mother provided no verification of her pending employment with Taco Bell. During the 18-month period between the child's removal and the permanent custody hearing, Mother was never employed.

{¶ 27} The juvenile court found that Mother completed a substance abuse assessment in January 2012, attended an Intensive Outpatient Program for a short time and then never returned, and subsequently refused multiple times to participate in any substance abuse treatment program. The record shows that Mother completed a substance abuse assessment on May 4, 2011, one day after testing positive for marijuana, and an updated substance abuse assessment on January 30, 2012, four days after testing positive for marijuana. During the course of the proceedings, Mother tested positive for drugs numerous times, including marijuana, opiates, benzodiazepines, and amphetamine.

**{¶ 28}** Mother was convicted in October 2011 of OVI and failure to report an accident for driving intoxicated and hitting a parked car at a gas station. She was arrested in November 2011 for domestic violence against a sibling. She was incarcerated in December 2011 for unpaid fines. On April 21, 2012, she was arrested for unpaid fines and was found to be in possession of drugs (heroin and Klonopin, a benzodiazepine) which she ingested while in police custody. As a result of the incident, she was charged with several felony drug offenses. She was incarcerated from April 21 to August 29, 2012.

**{¶ 29}** After months of denying she had a substance abuse problem and refusing to participate in or complete any substance abuse treatment program, Mother eventually admitted she was a drug addict. She also admitted at the hearing she did not become serious about her drug addiction until she faced prison time on her felony drug charges. As the juvenile court found, "Mother is currently waiting to see if she has been accepted into the Butler County Felony Drug Court program for treatment in lieu of incarceration on pending drug charges." The court noted that "Mother will face felony prison time if she is not accepted into the program."

**{¶ 30}** Mother testified that while she still is a drug addict, she is not currently using and has no desire to use. She also testified her drug addiction "had a very strong hold on [her]." Mother explained that she initially smoked marijuana, but became addicted to prescribed medication following the death of her son in the fall of 2010 (no evidence was presented as to the son). She eventually started using heroin.

**{¶ 31}** Finally, with regard to R.C. 2151.414(D)(1)(e), the juvenile court found that Mother had refused on many occasions to engage in any of the substance abuse programs offered (thus meeting the factor in R.C. 2151.414[E][9]).

**{¶ 32}** In light of the foregoing, and after a thorough review of the record, we find that the juvenile court's decision granting permanent custody to the Agency is in A.M.L.'s best

- 8 -

interest and not against the manifest weight of the evidence. *See In re S.S.*, 2d Dist. No. 2011-CA-07, 2011-Ohio-5697 (upholding a grant of permanent custody in light of mother's total lack of progress on case plan services and her failure to become and remain drug free). A juvenile court "is not required to deny [a] permanent custody motion simply based upon the groundless speculation that the mother might successfully complete her drug treatment, * * * and remain drug-free." *In re J.C.*, 4th Dist. No. 07CA834, 2007-Ohio-3783, ¶ 25. "[A] parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re L.M.*, 11th Dist. No. 2010-A-0058, 2011-Ohio-1585, ¶ 50. Although at the time of the permanent custody hearing, Mother had taken some small steps toward recovery and compliance with the case plan, it was too little, too late. Further, there is no indication Mother has remedied her substance abuse problem.

{¶ 33} Therefore, having found no error in the juvenile court's decision granting the Agency permanent custody of A.M.L., Mother's two assignments of error are overruled.

{¶ 34} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.