[Cite as *In re AsF(F)*, 2016-Ohio-7836.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


IN THE MATTER OF: AsF(F)                    :

                                            :          CASE NOS. CA2016-05-020
                                            :                    CA2016-05-021

                                            :          O P I N I O N
                                                       11/21/2016
                                            :

                                            :


APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 21430006


Ashli N. Stonerock, 8 East Main Street, West Jefferson, Ohio 43162, Guardian Ad Litem

Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for appellant, M.C.

J. Michael Murray, 8 East Main Street, West Jefferson, Ohio 43162, for appellant, J.F.

Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for appellee


**M. POWELL, P.J.**

{¶ 1}   Appellants, the biological parents of As.F. ("Mother" and "Father"), both appeal a decision of the Madison County Court of Common Pleas, Juvenile Division, granting permanent custody of As.F. to appellee, Madison County Department of Jobs & Family

Services ("MCDJFS").[1]

{¶ 2}    As.F. was born on January 30, 2014, testing positive for opiates.   As a consequence, a voluntary case plan was initiated with Mother and Father on January 31, 2014 to insure and monitor As.F.'s well-being.  On September, 15, 2014, the caseworker filed a dependency complaint for As.F. and requested an ex parte emergency order for temporary custody.  The complaint alleged Mother had been noncompliant with MCDJFS, including a period where Mother and As.F.'s whereabouts became unknown until Mother's arrest on September 5, 2014.  During Mother's incarceration, she left As.F. in the care of Father. However, she was unable to provide the caseworker with Father's address.  The complaint further alleged that Father had also been substantially noncompliant with MCDJFS and submitted a drug screen positive for cocaine, opiates, and benzodiazepines.  Based on the foregoing, on September 26, 2014, the juvenile court held a shelter care hearing.  The juvenile court found probable cause that As.F. was in immediate danger from the surroundings and that removal was necessary to prevent immediate or threatened physical or emotional harm.  Based on this finding, the juvenile court issued an ex parte emergency order pursuant to R.C. 2151.31(D) authorizing MCDJFS to take immediate custody of As.F.

{¶ 3}    Furthermore, MCDJFS implemented case plans for both Mother and Father, which began on November 25, 2014.  Their case plans included a permanency goal for reunification of As.F. with Mother and Father and required the parents to obtain stable housing and employment, engage in mental health and drug treatment, and submit to random drug screenings.  Following a series of hearings and continuances, on March 18, 2015, the juvenile court adjudicated As.F. a dependent child.  In so doing, the juvenile court

---

1. We note that Mother and Father filed a joint notice of appeal; however, only Mother filed a brief and assigned error to the juvenile court's decision.

found that returning As.F. to Mother and Father's home was not in the child's best interest and welfare. The juvenile court further found that As.F.'s removal was during an emergency in which the child could not safely remain at the home and that MCDJFS had made reasonable efforts to prevent As.F.'s removal, to eliminate As.F.'s continued removal, and to make it possible for As.F. to return home.

{¶ 4} On December 1, 2015, MCDJFS moved for permanent custody. In support of permanent custody, MCDJFS introduced the testimony of the caseworker, who testified that throughout the pendency of MCDJFS's temporary custody of As.F., both parents failed to make any meaningful progress in completing their case plans for reunification. The caseworker noted Mother's single unsuccessful attempt at completing a drug treatment program, the parents' repeated and consistent noncompliance with other prescribed case plan services, sporadic communication between the agency and parents, including a period of several months with no communication, and the parents missing an overwhelming majority of their scheduled visits with As.F.

{¶ 5} In addition to these concerns, both parents continued to abuse drugs evidenced by failed drug screenings, and both parents' failed to complete a mental health assessment. Mother failed to secure employment and Father worked sporadically. The caseworker was unable to confirm that the parents had obtained stable housing because she was never afforded the opportunity to enter their current residence. Moreover, both parents' case plans provided for weekly visitation with As.F., but as of March 2015, Mother had attended only 6 of 58 visits and Father had attended only 12 of 79 visits.

{¶ 6} As.F.'s guardian ad litem ("GAL") testified at the permanent custody hearing, and recommended permanent custody be granted in favor of MCDJFS. The GAL testified that both parents displayed affection for As.F. and engaged in parent-child activities during

visits, such as reading a book and playing together. However, the GAL expressed concerns about the inconsistency of the parents visits, which resulted in As.F. not being completely comfortable around the parents during the visits.

{¶ 7} Next, Mother testified on her own behalf. Mother stated she believes As.F. has begun to bond with her as she has tried to recently complete more visits. Mother stated that As.F. had once referred to her as "mommy." However, Mother also admitted she struggles with drug addiction, but had been sober for one month at the time of the hearing and had recently begun counseling for her addiction. Mother stated she had lived at her current residence with Father for approximately five to six months and believed it to be a stable residence. Mother acknowledged she had yet to take steps to complete the mental health assessment in her case plan.

{¶ 8} After taking the matter under advisement, the juvenile court granted the motion for permanent custody. The juvenile court concluded that As.F. had been in the temporary custody of MCDJFS for 12 or more months of a consecutive 22-month period and that placing As.F. in the permanent custody of MCDJFS was in the child's best interest. Mother now appeals the decision of the juvenile court, raising one assignment of error for review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE EVIDENCE PRESENTED DOES NOT RISE TO A LEVEL OF THE "CLEAR AND CONVINCING" STANDARD OF PROOF WITH REGARD TO TERMINATION OF PARENTAL RIGHTS.

{¶ 11} Mother's assignment of error that the termination of her parental rights for As.F. was not supported by clear and convincing evidence is not based upon any claim that the statutory requisites for granting permanent custody were not satisfied. Mother does not contest the juvenile court's determination that As.F. had been in the temporary custody of

MCDJFS for 12 or more months of a consecutive 22-month period as of the time of the filing of the motion for permanent custody.  Mother does not challenge the juvenile court's best interest findings with regard to R.C. 2151.414(D)(1).  Rather, Mother's argument is that the statutory framework is flawed because "the nature of a heroin addiction is such that the statutory 12 out of 22 months is likely to be insufficient time for an addicted parent to turn it around."  Mother cites to no case law or statutory authority in support of this proposition.

{¶ 12} "The rights to conceive and to raise one's children have been deemed 'essential' * * *."  *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923).  "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'"  (Citations omitted.)  *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40.  "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so."  *Id.*  "The state's power to terminate parental rights is circumscribed."  *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979).  However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care.  [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child."  *In re K.H.* at ¶ 41, quoting R.C. 2151.01(A).

{¶ 13} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met.  *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1308 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6.  "Clear and convincing evidence is that measure

or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 14} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA-2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 15} Mother complains that the 12 of 22 consecutive months' requirement renders it

unlikely that a heroin-addicted parent may ever prevail in a permanent custody case because of the time necessary to overcome the addiction. However, as explained above, the 12 of 22 consecutive months' requirement is only a part of the statutory requisite necessary for the granting of a motion for permanent custody. As discussed more fully below, a juvenile court must also find that permanent custody serves the child's best interest based upon the non-exclusive enumerated factors of R.C. 2151.414(D)(1). Additionally, in this case, the parents were not limited to the 12-month period during which As.F. was in the temporary custody of MCDJFS. Rather, the parents and MCDJFS engaged in a voluntary case on January 31, 2014, in which the parents' substance abuse was the primary focus due to As.F. testing positive for opiates at birth. The parents had nearly two years from the initiation of the voluntary case to address their drug addiction before the permanent custody motion was filed on December 1, 2015. During this period, the parents were intermittently incarcerated, failed to regularly visit As.F., failed to engage in and successfully complete substance abuse and mental health treatment, and continued to abuse drugs.

{¶ 16} We need not determine in the abstract whether the 12 of 22 consecutive months' requirement provides sufficient time for a drug-addicted parent to remedy the conditions that caused the child to be placed outside the home.[2] This is not a case where, despite diligent efforts by the parents to engage in and benefit from case plan services, the statutory timeframe was not sufficient to remediate the problems leading to the child's removal from the parents' custody. On the contrary, this is a case where the parents failed to utilize the time afforded to them to make any substantial progress toward reunification. A juvenile court "is not required to deny [a] permanent custody motion simply based upon the

---

2. It is worth noting that consistent with many appellate districts in the state of Ohio, we have previously held the 12 of 22 consecutive months' requirement is not unconstitutional. *Accord In re M.O.*, 12th Dist. Warren Nos. CA2011-01-003 and CA2011-01-008, 2011-Ohio-2855, ¶ 40.

groundless speculation that the [parents] might successfully complete [their] drug treatment, * * * and remain drug-free." *In re E.F.*, 12th Dist. Clinton Nos. CA2016-03-003, CA2016-03-004, CA2016-03-005, CA2016-03-006, and CA2016-03-007, 2016-Ohio-7265, ¶ 36, citing *In re J.C.*, 4th Dist. Adams No. 07CA834, 2007-Ohio-3783, ¶ 25. The law does not afford a parent an indefinite period to remedy the conditions that caused the child's removal. *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32.

{¶ 17} Turning now to whether permanent custody served As.F.'s best interest, R.C. 2151.414(D)(1), provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 18} In granting MCDJFS's motion for permanent custody, the juvenile court considered each of the best interest factors. With respect to the first statutory factor, the juvenile court found that both parents failed to follow through with MCDJFS since the juvenile court granted temporary custody on September 25, 2014. Further, the juvenile court found

- 8 -

that Mother's mental health has not been stable nor has she maintained employment throughout the pendency of the case. Additionally, both parents have continued their drug use throughout the case. The juvenile court also considered the testimony of the GAL that As.F. did not seem attached to either parent and that the parents' visitation has been sporadic with Mother attending only 6 of 58 visits and Father attending only 12 of 79 visits. Finally, the court noted that there are no other relatives available for an appropriate placement.

{¶ 19} In consideration of the second statutory factor, the juvenile court found that, due to her young age, As.F. was too young to express her wishes. The GAL also expressed this position with respect to As.F.'s age. Additionally, the GAL recommended granting permanent custody to MCDJFS based upon the parents' repeated failure to remedy the conditions that initially caused As.F. to be placed with a foster family. The GAL cited their lack of commitment toward As.F. by failing to regularly support, visit, and communicate with As.F., their unwillingness to provide a stable permanent home by not maintaining a residence or employment, and their refusal to make any strides in completing their case plans, as neither has even completed their mental health assessment in addition to providing positive drug screens throughout the pendency of the case.

{¶ 20} With respect to the third statutory factor, the juvenile court reviewed the child's custodial history and found As.F. was adjudicated dependent and had been in the temporary custody of MCDJFS for 12 or more months of a consecutive 22-month period.

{¶ 21} In considering the fourth statutory factor, the juvenile court found that As.F. was in need of a legally secure placement and that As.F.'s need for such a placement could not be achieved without a grant of permanent custody. The juvenile court stated that MCDJFS had made reasonable efforts to prevent As.F.'s continued removal from the natural parents'

home, including developing a case plan, arranging counseling and transportation, and attempting to perform home visits. Considering the extent of these efforts by MCDJFS and the consistent noncompliance of the parents, the juvenile court found that reunification was not possible.

{¶ 22} Despite these repeated failures by both parents to make any real steps in completing their case plans, Mother now claims both parents have found a program that is helping them meet the goals of their case plans and overcome their addiction. This claim requires the court to speculate whether Mother and Father can obtain *and permanently maintain sobriety*, despite the weight of the evidence demonstrating an unwillingness to make any real effort to achieve the goals of their case plans, let alone just sobriety. *Accord In re E.F.*, 12th Dist. Clinton Nos. CA2016-03-003, CA2016-03-004, CA2016-03-005, CA2016-03-006, CA2016-03-007, 2016-Ohio-7265, ¶ 34. "To anticipate the future, however, is at most a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision[,] not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]." *Id.*, citing *In re R.S.-G.*, 4th Dist. Athens No. 15CA2, 2015-Ohio-4245, ¶ 53. "The law does not require the court to experiment with the child's welfare to see if [s]he will suffer great detriment or harm." *In re R.S.-G.* at 53.

{¶ 23} Finally, with respect to the fifth statutory factor, the juvenile court noted both parents have a history of drug and/or alcohol abuse, each have tested positive for illegal drugs on several occasions throughout the pendency of temporary custody, and As.F. tested positive for opiates at birth.

{¶ 24} Based on these findings, the juvenile court found by clear and convincing evidence that it was in As.F.'s best interest to grant permanent custody to MCDJFS. After a thorough review of the record, we find that the juvenile court's determination regarding the

best interest of As.F. is supported by clear and convincing evidence. *See In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 31-38 (holding a grant of permanent custody was in child's best interest where parent failed to make any progress in case plan and failed to become and remain drug free). Though it does appear that Mother and Father have a deep affection and love for As.F., there are compelling reasons to weigh the best interest factors in favor of permanent custody to MCDJFS. Specifically, the ongoing concerns with the parents continued drug use, their refusal to make any real attempts at completing their case plans, their inability to secure stable housing or employment throughout the temporary custody period, their overwhelming failure to attend visits with As.F., and their sporadic communication issues over an extended period.

{¶ 25} Finally, Mother suggests that the juvenile court awarded MCDJFS permanent custody of As.F. based upon her status as a drug addict when she argues that absent the parents' drug addiction, there was not any evidence of abuse or neglect. First, As.F. was adjudicated a dependent child, not an abused or neglected child. Nonetheless, As.F. is an abused child because she was born testing positive for opiates. *See, e.g., In re Baby Boy Blackshear*, 90 Ohio St.3d 197, 200 (2000) ("when a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031[D], *per se* an abused child."). Second, in a permanent custody case, the focus is not upon whether the child continues subject to abuse, neglect, or dependency, but whether the conditions causing removal have been remediated and whether permanent custody is in the child's best interest with reference to the statutory factors.

{¶ 26} A review of the juvenile court's decision reveals that it never relied upon the parents' status as drug addicts in granting permanent custody. *Compare In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 53 (affirming grant of permanent custody where juvenile court

considered multiple factors affecting the safety of a child living with a pedophile, including the nature and progress of treatment and ongoing concerns of relapse), *with In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, ¶ 35 (reversing grant of permanent custody where juvenile court based decision solely on parents limited cognitive abilities, rather than their progress within their respective case plans, ability to provide clothing, food, shelter, and care, and their relationship with the child).  The court in *K.H.* found that one's status as a pedophile was categorically distinct from the ongoing concerns of relapse and child safety.  Consistent with *K.H.* and contrary to Mother's argument, current substance abuse is distinct from one's status as a drug addict.  Moreover, as the discussion of the best interest factors above reveals, the juvenile court relied upon the evidence relating to the various statutory factors, which included, but was not limited to, the parents' continued abuse of drugs during the pendency of the case.  Mother's sole assignment of error is hereby overruled.

{¶ 27} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.