[Cite as *In re C.M.*, 2017-Ohio-57.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| C.M. | : | CASE NO.   CA2016-07-051 |
| | : | O P I N I O N<br>1/9/2017 |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2012 JC 0432

Megan Salyers, 4725 Cornell Road, Cincinnati, Ohio 45241, guardian ad litem

Dever Law Firm, Scott Hoberg, 9146 Cincinnati-Columbus Road, West Chester, Ohio 45069, for appellant

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

**RINGLAND, J.**

{¶ 1} Appellant, the biological mother of C.M. ("Mother"), appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of C.M. to appellee, the Clermont County Department of Job and Family Services ("CCDJFS"). For the reasons detailed below, we affirm.

{¶ 2} On January 9, 2012, CCDJFS filed a dependency complaint and requested

temporary custody of C.M., who was less than two years old. The complaint alleged that CCDJFS received a report stating that Mother had overdosed on heroin. Following a hearing, C.M. was adjudicated a dependent child. C.M. remained in the custody of Mother, but was subject to the protective supervision of CCDJFS.

{¶ 3} Mother's case plan including housing, income, mental health, drug treatment, and parenting education. Mother made progress towards the completion of her case plan, particularly with her completion of a substance abuse treatment program. However, the record reflects that CCDJFS continued to express concerns with respect to Mother's maturity and ability to parent. Throughout the pendency of these proceedings, C.M.'s father has failed to enter into a case plan and has no involvement in this matter.

{¶ 4} The ensuing years brought continued involvement with Mother and CCDJFS. On November 8, 2012, CCDJFS was granted temporary custody through an emergency order. Following a hearing, C.M. was again placed with Mother, again subject to the protective supervision of CCDJFS.

{¶ 5} C.M. was again removed on June 10, 2013 and temporary custody was granted to the agency on August 16, 2013. CCDJFS moved for permanent custody on August 22, 2014. Following a hearing, CCDJFS was denied permanent custody of C.M. and Mother, again, was able to obtain protective supervision of C.M. on April 10, 2015.

{¶ 6} CCDJFS moved for permanent custody a second time and a trial was held on February 5, 2016. At the permanent custody hearing, the state presented the testimonies of several CCDJFS caseworkers, the guardian ad litem ("GAL"), C.M.'s foster father, as well as Mother's counselor and other individuals assigned to her case to assist with parenting and responsibility issues.

{¶ 7} Mother testified in support of her case and also called an independent homecare provider, her brother, and a neighbor. In addition, Maternal Grandmother testified

in support of Mother and also in support of her own motion for custody.

{¶ 8} The GAL prepared a written report in which she recommended permanent custody be granted to the agency. The GAL noted that Mother and C.M. are bonded, but expressed serious concern with Mother's maturity and ability to parent. In addition, the GAL testified that Maternal Grandmother was not a suitable placement, as she had not completed a home study and there were concerns that Mother would continue to exert influence and "run the show" with respect to C.M. In addition, there were concerns with Maternal Grandmother's stability in her current living arrangement. While Maternal Grandmother maintained an apartment, she did not have long-term plans at that residence and there were concerns that she would return to her home in Moscow, Ohio. At the time, Maternal Grandmother's son and his family resided in the Moscow home and had had been uncooperative with CCDJFS. In her testimony, Maternal Grandmother admitted that her son and his wife had a background that included "some things" on "the unacceptable list."

{¶ 9} After taking the matter under advisement, the juvenile court magistrate granted permanent custody in favor of CCDJFS. Mother then filed objections to the magistrate's decision, which were overruled. Mother now appeals the juvenile court's decision granting permanent custody to CCDJFS, raising one assignment of error for review:

{¶ 10} IN A CHILD CUSTODY CASE, THE TRIAL COURT ERRED IN ITS DECISION AND ORDER GRANTING PERMANENT CUSTODY OF THE CHILD TO THE AGENCY DESPITE THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} In her sole assignment of error, Mother argues the juvenile court's decision granting permanent custody of C.M. to CCDJFS was not in C.M.'s best interest and was not supported by the weight of the evidence. After a thorough review of the record, we find Mother's assignment of error is without merit.

{¶ 12} Before a natural parent's constitutionally protected liberty interest in the care

and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 13} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 14} In this case, the juvenile court found by clear and convincing evidence that

- 4 -

C.M. had been in the temporary custody of CCDJFS for more than 12 months of a consecutive 22-month period as of the date the agency filed for permanent custody. Mother does not dispute this finding. Rather, Mother contests the juvenile court's finding that granting permanent custody of C.M. to CCDJFS was in his best interest.

{¶ 15} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 16} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that C.M. and his father do not have a relationship. Though Mother and C.M. do have a relationship and are bonded, the juvenile court also found that their relationship is stressful. Mother has problems disciplining C.M. and there are concerns about Mother's ability to parent. Mother has a pattern of failing to develop a daily routine and repeatedly failed to ensure C.M.'s attendance at court-ordered

educational daycare in a timely fashion and there was great concern that Mother would not ensure C.M.'s attendance at school.

{¶ 17} In addition, the trial testimony highlights a concerning inability to parent. In communications with C.M., Mother will often ask adult-style questions and is unable to differentiate between age-appropriate behavior and topics. The majority of their visitation time consists of playing videogames, instead of engaging in appropriate conversation. Furthermore, agency caseworkers testified about a number of situations highlighting Mother's impulsive behavior and inability to control C.M. As one example, a CCDJFS caseworker explained that during one visit to the agency, a fire alarm sounded and everyone was evacuated from the building. As Mother, C.M., and the caseworker were reentering the building, C.M. chose to hold the caseworker's hand. Mother became offended by this act and threatened not to visit C.M. again and walked away from him, leaving him in tears. In another instance, a CCDJFS caseworker made an unannounced visit to Mother's home to discover that C.M. had been left at home unattended.

{¶ 18} Regarding Maternal Grandmother, there is justified concern that Maternal Grandmother is not a suitable placement. Despite the lengthy proceedings, Maternal Grandmother did not take the necessary steps to offer an alternative arrangement until the very end of these proceedings. Though Maternal Grandmother currently resides in an appropriate home, she admitted that she does not have a long-term plan in that residence and there is concern that she will move back to her home in Moscow, which would not be appropriate considering concerns about the other individuals residing there.

{¶ 19} To the contrary, the juvenile court found that "there is no doubt that the foster family has had a significantly positive impact upon C.M.'s life." The trial court noted that a more structured family environment has alleviated many of the behavioral issues that C.M. exhibits with Mother. The foster family attends to C.M.'s educational and emotional needs

and their family structure provides C.M. with ample interaction with extended family. Despite initial concerns that C.M. may require special education services due to developmental delays, those concerns were later resolved as C.M. presents as a very intelligent child who enjoys reading with the foster family and keeping a reading journal. In addition, the record reflects that C.M. is very bonded with the foster family. The foster family has expressed a desire to adopt C.M. should permanent custody be granted to the agency.

{¶ 20} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court stated that the child's wishes had been expressed to the GAL and C.M. expressed his desire to remain with the foster family, but still be able to visit Mother.

{¶ 21} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed C.M.'s custodial history and found that C.M. had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 22} In considering R.C. 2151.414(D)(1)(d), the juvenile court found C.M. is in need of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way C.M.'s needs can be achieved. The juvenile court noted that Mother had attended many of the programs mandated by her case plan, but had failed to demonstrate the desire and motivation to apply those lessons to her daily life. Mother does not accept guidance from others, as she believes that CCDJFS is to blame for C.M.'s removal from her home.

{¶ 23} In sum, Mother was given one final chance to prove that she could care for C.M., but has failed to rectify the very serious concerns about her ability to parent. The most recent attempts at parenting indicate that Mother cannot control C.M., and that she cannot refrain from loud outbursts in front of the child, or make C.M.'s health and welfare her first priority. While in the care of the foster family, C.M. has been afforded the stability and security that he requires.

{¶ 24} With respect to Maternal Grandmother, the juvenile court found that her situation was "unsuitable." Again, Mother does not have long-term plans in her current living arrangement and there are concerns that Mother has not been forthright with the agency, as evidenced by Maternal Grandmother not informing the agency that she had another child in her care. In addition, Maternal Grandmother's inability to control Mother will likely continue to keep C.M.'s life in chaos.

{¶ 25} Based on these findings, the juvenile court found by clear and convincing evidence that it was in C.M.'s best interest to grant permanent custody to CCDJFS. On appeal, Mother disputes the juvenile court's findings and argues that the evidence did not support the grant of permanent custody. In so doing, Mother alleged that she has maintained her sobriety and has secured stable housing. In addition, Mother states that the evidence shows that she knows how to support C.M. and can provide him with a healthy and safe environment. Although Mother agrees that certain provisions of the case plan have not been followed, she alleges that many of these alleged violations were mere "technical violations" and do not reflect agency concerns. In sum, Mother believes that the evidence demonstrated that placement with her would be appropriate and legally secure.

{¶ 26} We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interest of C.M. is supported by clear and convincing evidence and was not against the manifest weight of the evidence. This matter has a lengthy and concerning history. Though Mother has made progress in the treatment of her drug addiction and shown positive growth in other areas, the record reflects that C.M.'s best interests are best served through a grant of permanent custody to CCDJFS. Mother has had over four years to improve the situation in her household. Still, Mother does not seem able to control herself or recognize the full extent of her parental responsibilities with respect to the care of C.M. As this court has stated previously, "a parent is afforded a

reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23; *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32.  While Mother has shown some ability to work within the confines of her case plan, it was too little, too late.  The record clearly indicates that Mother is incapable of taking care of C.M. on a consistent basis.

{¶ 27}  Therefore, having found no error in the juvenile court's decision granting CCDJFS permanent custody of C.M.  Mother's single assignment of error is overruled.

{¶ 28}  Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.