[Cite as *In re V.N.*, 2017-Ohio-2586.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NOS. CA2016-12-229 |
| V.N., et al. | : | CA2016-12-230 |
| | | CA2016-12-235 |
| | : | CA2016-12-236 |
| | | |
| | : | O P I N I O N |
| | | 5/1/2017 |
| | : | |
| | | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2015-0015, JN2015-0016

Debra Rothstein, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, Guardian ad Litem for children

Carol Garner, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, Guardian ad Litem for appellant, A.N.

Jeannine Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, Guardian ad Litem for appellant, F.M.

Dawn Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, for appellant, A.N.

Michele Temmel, 6 South Second Street, Suite 305, Hamilton, Ohio 45011, for appellant, F.M.

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Department of Job and Family Services

Sarah Owens, Parachute, 284 North Fair Avenue, Hamilton, Ohio 45011, for CASA Darlene Davidson

**PIPER, J.**

{¶ 1} Appellants, the biological parents ("Mother" and "Father") of V.N. and V.N. (twins, referred to collectively as the "children"), appeal a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to appellee, the Butler County Department of Job and Family Services ("BCDJFS").

{¶ 2} On January 26, 2015, BCDJFS filed a dependency and neglect complaint, which was later amended on January 29, 2015, and requested temporary custody of the children who were born on June 24, 2014. The complaint alleged BCDJFS received a report stating the children were admitted to Cincinnati Children's Hospital and were failing to thrive. The complaint included issues such as the children being below the growth curve and abnormal lab work with low sodium levels, risk of lack of brain growth and other developmental issues, concern the parents were not feeding the children as instructed, and inability to contact the parents. These concerns were heightened because the children were born prematurely. Based on the allegations, the magistrate found probable cause to believe that the issuance of an emergency order was necessary to prevent immediate or threatened harm to the children and placed them in the temporary custody of BCDJFS.

{¶ 3} On May 27, 2015, the parents stipulated to dependency and the magistrate made such finding, dismissed the neglect allegation, and adopted the facts as set forth in the amended complaint. The parents' case plans included couples counseling, individual therapy, psychological assessments, parenting classes, and required them to obtain and maintain financial stability and a stable home. Additionally, Father's case plan required him to complete a STABLE sexual risk evaluation. On April 15, 2016, BCDJFS moved for permanent custody on the basis the children could not be placed with either parent within a reasonable time because no further treatment plan could be formulated to place the parents in a position to provide adequate child care, and thus, BCDJFS asserted granting their

permanent custody motion was in the children's best interest. A trial on the matter resulted in the following facts:

{¶ 4} Prior to the initiation of the present case, both parents recently worked with BCDJFS in regards to Mother's other child, which included parenting training for newborns. Both Mother and Father made steps toward completion of their individual case plans. Particularly, the parents completed their psychological assessments, individual and couples therapy, and were engaged in ongoing in-home parenting classes with Judy Curley, a Children Services Program Specialist for BCDJFS. Mother did not obtain employment throughout the pendency of the case and Father received Social Security income in addition to working part-time. At the time of the adjudication hearing, Mother was in the process of seeking Social Security income because her mental illness prevented her from being around people and working. Despite this assertion, Mother testified at trial she had a job lined up following the resolution of this case. Mother conceded her income situation is unstable. Mother and Father resided at the same residence for five months. Aside from water damage to the laundry room ceiling, there were no other safety concerns identified within the residence.

{¶ 5} Mother testified she actively participated in the services within her case plan as well as regularly attended most of the children's medical appointments. Mother stated she had reached out to the various people involved with this case to seek additional parenting instruction, but did not receive any further options. Mother identified the health concerns afflicting the children and detailed the children's current nutritional requirements. Mother acknowledged the learning process required to meet the children's specific nutritional needs and felt she has mastered such requirements. Mother denied force-feeding the children, but stated she has been frustrated when they refuse to eat. Instances of nutritional error on the parent's behalf were identified, such as providing cookies to the children when they require a

low or no sugar diet. Mother testified the parents made such errors before receiving a full explanation of the children's dietary needs. Father testified and was able to identify the health concerns and nutritional requirements for the children. Father further explained he "totally disagreed" with the doctor's prognosis for why the children were not gaining weight, and thought, there may be a more serious intestinal concern beyond dietary issues.

{¶ 6} The foster mother ("Foster Mother") testified the children needed "extra-special care" regarding their feeding. The children had many issues with vomiting, weight gain, and stiffness, and thus, were very fragile. She testified that once she began caring for the children, their health immediately improved. Despite this improvement, Foster Mother stated the children will continue to have ongoing medical issues and will need extensive medical procedures requiring extra time and care. Additionally, the children participated in occupational therapy, which improved their stiffness. Foster Mother acknowledged Mother and Father attend most medical appointments and appeared engaged during them. However, Foster Mother expressed concern regarding the parents' inability to bring appropriate food during appointments and other visits. Foster Mother testified the doctor informed the parents about eight or ten times the children should have little to no sugar. Foster Mother explained this instruction appeared unsuccessful because the parents still brought inappropriate food. Foster Mother stated that caring for the children was exhausting, but she still wishes to adopt the children.

{¶ 7} Curley testified she began in-home parental training with Mother and Father in October 2015, which continued for nine months. She explained the focus of the program was teaching the parents to follow the nutritional requirements needed to improve the children's health as well as proper disciplinary procedures. Curley explained the program can be much more extensive, but due to the parents' lack of progression, the scope of the program was limited to nutrition and discipline. The nutritional plan relies on a food pyramid

to structure the children's feeding, which the parents often misplaced.

{¶ 8}  Curley testified the parents were unreceptive to lessons in the beginning, and even after nine months of training, significant barriers remain.  Curley acknowledged some improvement – mainly on the part of Father – however, the parents' defensiveness prevents them from realizing their inabilities.  Specifically, Mother attributes blame to someone else for any issues that arise, she is prone to dishonesty, and possesses an inability to listen.  Father tends to be dishonest as well, but will "walk his lies back."  Both parents have at times shown improvement, but then, fall back into old ways inhibiting their progress.  They tend to minimalize issues and lack a foundation to recognize problems and areas for personal growth.  Curley found their approach to parenting lessons to be "mendacious" and "truculent", and that they often "dig their feet in."  Curley testified that she "[does not] know what the next visit will bring[.]"  Curley further stated the "barriers are so insurmountable" that she never felt comfortable having the parents feed the children without supervision.

{¶ 9}  Sara Harrison, a caseworker from BCDJFS, testified she was assigned to both the present case and Mother's prior case involving her other child.  Harrison testified that prior to removing the children from the parents' home, they were very stiff with sunken eyes and had vomit saturated in their clothing.  Harrison stated there was no safety concerns with the parents' residence and acknowledged some improvement during visits.  However, Harrison also expressed concerns with leaving the children with the parents without supervision.  Additionally, Harrison testified Mother never contacted anyone involved with the case regarding additional parenting instruction.  Rather, Harrison stated Mother appeared to be proud of her progress in the services she was already undergoing.  Harrison does not believe the parents possess the ability to cope with their own personal issues while meeting the many needs of the children.  Therefore, Harrison opined reunification was not in the children's best interest.

{¶ 10} Deborah Miller and Rachel Stacy are the visitation specialists who supervised the parents' visits with the children during the pendency of this case. Stacy supervised most of the visits and Miller supervised two visits. Stacy stated the visits began at a level one, which means the specialist must always be within arm's reach of the children. The visits then progressed to level three where the specialist must check-in on the children every 15 minutes. Stacy testified the parents improved with feeding and interacting with the children, but were never permitted to feed the children unsupervised (level one) due to ongoing concerns. However, Stacy explained these concerns have mostly subsided because the children are now able to feed themselves with the use of utensils. Stacy did identify a few safety concerns regarding the children falling into furniture and tripping on toys. Stacy testified the parents were inconsistent in conducting the body exercises the children needed to alleviate stiffness. Further, the parents did not understand what they needed to be worried about when playing and interacting with the children. Miller testified she is uncomfortable with moving the parents to level four supervision where the specialist only checks in and out at the beginning and end of the visit, as the parents need more instruction. Miller did not identify any safety or feeding concerns from the two visits she supervised.

{¶ 11} Dr. Joseph Lipari, a psychologist for C.D.C. Mental Health Services, conducted the parents' psychological evaluations, which he documented in individual reports for Mother and Father. Dr. Lipari diagnosed Mother with "Adjustment Disorder With Mixed Anxiety and Depressed Mood Rule Out Attention-Deficit/Hyperactivity Disorder" and "Personality Disorder Not Otherwise Specified With Histrionic, Narcissistic Dependent, Obsessive-Compulsive, and Antisocial Features." Dr. Lipari diagnosed Father with "Adjustment Disorder With Mixed Anxiety and Depressed Mood" and "Personality Disorder Not Otherwise Specified with Obsessive-Compulsive and Dependent Features." Dr. Lipari noted the difficulty in diagnosing the parents due to their defensiveness.

{¶ 12} Finally, a guardian ad litem ("GAL") and a court-appointed special advocate ("CASA") represented the children throughout the pendency of the case. The CASA testified she was present during 16 visits and attended two semi-annual reviews. Based on this observation, the CASA expressed concerns with the parents' ability to adhere to the children's nutritional guidelines and the parents' use of abnormally dirty bibs and toys. The CASA did not believe the parents were ready for level four supervision and testified the parents seemed to ignore Curley's instructions during in-home parental training, stating "[t]hey just kept doing what they were doing." The CASA found it troublesome the parents were still dealing with nutritional and sanitary issues, and identified the parents' lack of transportation and telephone as factors that may inhibit their ability to adequately care for the children.

{¶ 13} The GAL provided an oral report and recommendation during trial and stated "the children cannot be placed back with the parents within any reasonable time and that it is in the children's best interest to grant permanent custody to [BCDJFS], and that is so that the children can find and be placed in a secure adoptive home which will meet all their needs." In her report, the GAL cited the parents' tenuous circumstances, failed efforts to be consistent in their care for the children, inability to follow through with their professional instruction, and inability to make necessary changes to adequately support the well-being of the extra-special needs of their children. Based on these concerns, the GAL opined reunification would place the children at risk. Additionally, the GAL opined the only option for meeting the best interest of the children is granting permanent custody to BCDJFS for adoptive placement due to the parents' own struggles with transportation, communication, organization, accountability, lack of oversight, and questionable judgment.

{¶ 14} Following the conclusion of the trial, the magistrate granted BCDJFS's permanent custody motion. Both parents objected to the magistrate's finding. The juvenile

court held a hearing on the matter, and then, overruled the parents' objections. The present appeal followed.

{¶ 15}  Mother's Assignment of Error No. 1:

{¶ 16}  THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE AGENCY WHERE THAT DECISION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 17}  Father's Assignment of Error No. 1:

{¶ 18}  THE COURT'S DECISION AND ORDER OF PERMANENT CUSTODY VIOLATED THE PARENTS' CONSTITUTIONAL RIGHTS, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS BECAUSE THE AGENCY FAILED TO PROVE, BY CLEAR AND CONVINCING EVIDENCE THAT THE BEST INTEREST OF THE CHILDREN REQUIRES AN AWARD OF PERMANENT CUSTODY AND BECAUSE THE AGENCY FAILED TO PROVE, BY CLEAR AND CONVINCING EVIDENCE, THAT THE AGENCY HAD MADE REASONABLE EFFORTS TO REMEDY THE CONDITIONS THAT GAVE RISE TO THE REMOVAL OF THE CHILDREN FROM THE HOME AND TO REUNITE THE FAMILY.

{¶ 19}  In her sole assignment of error, Mother argues the juvenile court's decision granting permanent custody to BCDJFS was not in the children's best interest and was not supported by the weight of the evidence. Father assigns error to the juvenile court's decision on the same basis and further argues the decision was not supported by sufficient evidence. Mother and Father do not contest the juvenile court's best interest finding that the children had been in the temporary custody of BCDJFS for 12 or more months of a consecutive 22-month period as of the time of the filing of the motion for permanent custody. However, Father argues that the statutory framework permits BCDJFS to circumvent proving the

children could not be reunified with their parents. Father cites to no case law or statutory authority in support of this proposition.

{¶ 20} "The rights to conceive and to raise one's children have been deemed 'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

{¶ 21} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's

determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 22} Even if a trial court's judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude the judgment is against the manifest weight of the evidence. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 9. A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When considering a manifest weight of the evidence challenge, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed and a new trial ordered. *In re S.M.* at ¶ 10.

{¶ 23} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA-2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody

the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

**{¶ 24}** Neither parent contests the juvenile court's finding the children had been in the temporary custody of BCDJFS for 12 or more months of a consecutive 22-month period as of the time of the filing of the motion for permanent custody. However, Father asserts the 12 of 22 consecutive months' requirement renders the remainder of the statute superfluous because it permitted BCDJFS to delay returning the children to the parents after the children were no longer failing to thrive, possessed the ability to feed themselves, and could be placed in the custody of the parents. However, Father's argument is unsupported by the law. As explained above, "the 12 of 22 consecutive months' requirement is only a part of the statutory requisite necessary for the granting of a motion for permanent custody." *In re AsF(F)*, 2016-Ohio-7836, ¶ 15. To grant permanent custody, the "juvenile court must also find that permanent custody serves the child's best interest based upon the non-exclusive enumerated factors of R.C. 2151.414(D)(1)." *Id.*

**{¶ 25}** R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child

has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 26} In granting BCDJFS's motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at trial. With respect to the first statutory factor, the juvenile court found both parents have attended medical appointments regularly throughout the case and participated in supervised visits. The juvenile court found the children are familiar with both parents and identified a bond between the children and the parents. The juvenile court noted the CASA's testimony that Father's interactions with the children are more like an older brother than a father. The juvenile court further identified a deep bond between Foster Mother, the other foster siblings, and the children. Furthermore, the juvenile court acknowledged the Foster Mother has expressed a desire to adopt the children.

{¶ 27} In consideration of the second statutory factor, the juvenile court did not conduct an in camera interview with the children due to their age. Rather, the juvenile court considered the report and recommendations of the GAL, who recommended the children be placed in the permanent custody of BCDJFS. The GAL opined Mother and Father could not meet the children's needs because of the parents' own struggles with transportation, communication, organization, accountability, lack of oversight, and questionable judgment. Therefore, reunification would place the children at risk. The juvenile court also considered the recommendation of the CASA, who concurred with the GAL's concerns as well as the GAL's recommendation in favor of granting permanent custody of the children to BCDJFS.

{¶ 28}   With respect to the third statutory factor, the juvenile court reviewed the children's custodial history and found the children were adjudicated dependent and had been in the temporary custody of BCDJFS for 12 or more months of a consecutive 22-month period.

{¶ 29}   In considering the fourth statutory factor, the juvenile court found the children were clearly in need of a legally secure placement, as they had resided in foster care for approximately 18 months during the pendency of the case.  The juvenile court further found BCDJFS presented clear and convincing evidence neither Mother nor Father could provide the care the children required.  In making these findings, the juvenile court acknowledged the children were born prematurely, and although the children were not immediately removed from the parents' care, they were later removed for failing to thrive after admittance into the hospital due to ongoing safety and health concerns.  For this reason, the juvenile court examined the children's medical records, which reflected various concerns of medical personnel regarding the parents' ability to provide the special care the children required.  Specifically, these concerns included the parents' ability to appropriately recognize and respond to cues from the children, the parents' ability to grasp the children's medical needs and to feed the children so that they meet their strict nutritional requirements, the parents' communication issues with regards to medical providers and BCDJFS personnel, and the parent's lack of transportation.

{¶ 30}   The juvenile court then analyzed the parents' progress throughout the case, or lack thereof, with respect to the above concerns at the time of removal.  The juvenile court acknowledged the parents' completion of many of the programs mandated by their case plans and that the parents have made some progress in their respective programs and during visitation.  However, the juvenile court found despite their participation in these programs, there remains serious legitimate concerns regarding the parents' ability to safely care for the

children. In support of this finding, the juvenile court noted the parents' minimalization of issues and tendency to blame others and avoid accepting responsibility for personal mistakes, their extreme defensiveness and inability to retain the information taught during in-home lessons, their tendency to fall back on inappropriate parenting patterns, and constant distractions coupled with mendacious behavior.

{¶ 31} Despite weekly in-home parenting lessons for nine months, the juvenile court found Mother and Father were unable to progress beyond lessons focused on addressing the initial areas of concern. The parents could recite the children's medical concerns, but given this lack of progress, the juvenile court found it is not clear they understand the concerns. The juvenile court cited the nutritional errors concerning sugar and allergies by the parents despite overwhelming instruction and found their lack of following through demonstrated an ongoing concern. The juvenile court further supported this concern with the fact that although the parents progressed to level three supervision, they remained at level one during feeding. The juvenile court acknowledged the testimony of the visitation specialists conveying some progress by the parents, but even they were not comfortable moving the parents to level four supervision. Finally, the juvenile court found the fifth statutory factor inapplicable to this case. After considering the extent of these efforts by BCDJFS and the parents' failure to rectify the concerns that led to the children's removal, the juvenile court found reunification was not possible.

{¶ 32} Based on these findings, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to BCDJFS. On appeal, Mother and Father dispute the juvenile court's findings and argue that the evidence did not support the grant of permanent custody. In so doing, the parents assert they have made efforts to meet the requirements in their case plans, have regularly attended visits and medical appointments, and that they have shown sufficient progress to

demonstrate placement with them would be appropriate and legally secure. The parents further assert that any deficiency in their progress is due to BCDJFS' inability to provide either adequate or enough parental training.

{¶ 33} After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and not against the manifest weight of the evidence. Though it does appear that Mother and Father have made efforts to meet the requirements of their respective case plans as well as bonded with the children, there are compelling reasons to weigh the best interest factors in favor of permanent custody to BCDJFS. Mother and Father have had over 18 months to demonstrate they have remedied the issues that caused the children's removal, during which they have had the assistance of numerous medical and parenting professionals to help them improve their parenting abilities and provide a safe and secure home for the children. Despite this extensive assistance, the parents consistently demonstrated mendacious and defensive behavior, as well as failed to show any appreciable progress in meeting the special parenting needs required by the children. The parents possess an inability to grasp the children's medical needs and are otherwise incapable of learning and applying the parenting skills they should have obtained by participating in parenting lessons. As previously stated by this court, "a parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23; *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32.

{¶ 34} While Mother and Father have shown some attempt to progress within the confines of their case plan, it was too little, too late. *In re C.M.*, 12th Dist. Clermont No. CA2016-07-051, 2017-Ohio-57, ¶ 26. Moreover, successful completion of one's case plan is not dispositive of the issue of reunification. *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-

139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30 ("it is well-settled that the completion of case plan services alone does not equate to, or necessitate a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home"). Thus, the case plan is a means to the goal of reunification, but not the goal itself. Accordingly, the question is whether the parents have remedied the condition that caused the children to be removed in the first place. As analyzed above, the juvenile court's findings on this issue are clearly supported by the record.

{¶ 35} Therefore, having found no error in the juvenile court's decision granting BCDJFS permanent custody of the children. Mother's and Father's single assignments of error are overruled.

{¶ 36} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.