[Cite as *In re V.G.*, 2018-Ohio-709.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

IN THE MATTER OF: :

     V.G. : CASE NO. CA2017-10-022

                : O P I N I O N
                                2/26/2018

                :

                :

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AND20150016

Jess C. Weade, Fayette County Prosecuting Attorney, Sean M. Abbott, Fayette County Courthouse, 110 East Court Street, Washington C.H., Ohio 43160, for appellee

Landis S. Terhune-Olaker, P.O. Box 895, Washington C.H., Ohio 43160, guardian ad litem

Kathryn Hapner, 172 North High Street, Hillsboro, Ohio 45133, attorney for child

Melissa S. Upthegrove, 254 East Court Street, Washington C.H., Ohio 43160, for appellant

**RINGLAND, J.**

{¶ 1} D.G., the mother ("Mother") of V.G., appeals a decision of the Fayette County Court of Commons Pleas, Juvenile Division, granting permanent custody of V.G. to appellee, Fayette County Department of Job and Family Services ("FCDJFS"). For the reasons set forth below, we affirm the decision of the juvenile court.

{¶ 2} On March 3, 2015, FCDJFS filed a complaint alleging neglect and dependency, and requesting emergency temporary custody. The complaint alleged that on January 20, 2015, juvenile probation officers responded to a report Mother locked V.G. and V.G.'s two siblings in a bedroom. The complaint further alleged officers visited Mother's residence and knocked on the front door, but no one answered. The children informed the officers through an open window that they were locked in a bedroom. Mother and Mother's then-boyfriend, a known drug user, both admitted to locking the children in the bedroom and that the children would knock when they needed something. The bedroom where the children were located did not have any identifiable beds. The officers noticed toilet paper in the room and learned the children had been urinating and defecating out of the bedroom window. The officers arrested Mother, and on February 13, 2015, the Fayette County Grand Jury indicted her on three counts of endangering children.

{¶ 3} On March 4, the juvenile court granted FCDJFS's ex parte motion for temporary custody. The following month, Mother admitted dependency and the juvenile court dismissed the neglect allegation. On May 5, 2015, the juvenile court adjudicated the children dependent related to the father, who was not involved with this case or the present appeal. The juvenile court subsequently held a dispositional hearing and granted temporary custody on May 28, 2015. FCDJFS filed a motion for permanent custody on September 14, 2016, which FCDJFS later withdrew to allow Mother an additional opportunity to work towards completing her case plan objectives. On April 7, 2017, FCDJFS filed a second motion for permanent custody. Again, FCDJFS filed a motion to withdraw the second permanent custody motion. The juvenile court held a hearing on the second motion for permanent custody and motion to withdraw on August 29, 2017. The hearing revealed the following facts.

{¶ 4} The caseworker testified regarding the initial concerns leading to V.G.'s removal

discussed above with respect to the complaint. Mother's original case plan had a goal of reunification and required Mother to complete parenting classes, a mental health assessment and any recommended treatment therefrom, sign all releases, submit to random drug screenings, and obtain suitable housing and employment. Mother completed most of these case plan requirements. On July 11, 2016, FCDJFS returned V.G. to Mother's care. However, on August 17, 2016, FCDJFS removed V.G. a second time because Mother permitted a known drug user to be present in the residence with V.G. and the other children. FCDJFS filed its first motion for permanent custody alleging V.G. inappropriately touched other children and Mother had failed to transport V.G. to medical and counseling appointments. FCDJFS withdrew this motion to allow Mother additional time to work a new case plan. The new case plan contained similar requirements as the first case plan.

{¶ 5} In January 2017, while Mother worked her new case plan, FCDJFS placed V.G.'s sibling with Mother. However, after one and one-half days, FCDJFS removed the child from Mother's care because she permitted two known drug users to be present in the residence around the child. Shortly thereafter, Mother attempted suicide by ingesting a bottle of Zoloft prescription medication and a bottle of Tylenol PM. Following Mother's attempted suicide, placement with Mother was no longer an option because Mother resided with the maternal grandmother, who has a history with FCDJFS regarding a pending sex abuse case from 1998.

{¶ 6} The caseworker testified V.G. is bonded with Mother, Mother parents appropriately during visitation, and that she believed Mother could properly parent V.G. with "support." Mother completed most of her second case plan, but at the time of the permanent custody hearing had not obtained suitable housing and employment. Mother is unemployed and receives Social Security income. The guardian ad litem ("GAL") submitted a written report and recommendation to the juvenile court, recommending permanent custody to

FCDJFS.

{¶ 7} On October 11, 2017, the juvenile court granted permanent custody of V.G. to FCDJFS. Mother timely appealed from this decision.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED BY TERMINATING APPELLANT'S PARENTAL RIGHTS, AS THAT JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AS THE APPELLANT HAD SUBSTANTIALLY COMPLIED WITH THE CASE PLAN.

{¶ 10} Mother asserts the juvenile court erred by granting permanent custody of V.G. to FCDJFS because its decision was not supported by clear and convincing evidence and against the manifest weight of the evidence. Mother contends several best interest factors weighed in favor of denying FCDJFS's motion. Specifically, V.G. wished to return to Mother's care, Mother substantially completed her respective case plans, and she demonstrated the ability to parent V.G.

{¶ 11} "The rights to conceive and to raise one's children have been deemed 'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless

- 4 -

expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

{¶ 12} The state must prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's right to custody can be terminated. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 13} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When considering a manifest weight of the evidence challenge, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed and a new trial ordered. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10.

{¶ 14} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a

two-part test." *In re T.P.*, 12th Dist. Clermont No. CA2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 15} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 16} In granting FCDJFS's motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to the first statutory factor, the juvenile court found that prior to the commencement of this case V.G. resided with Mother, who locked her in a bedroom with her siblings and permitted a known drug user in the home around the children. Following V.G.'s first removal, FCDJFS briefly returned her to Mother's care, only to remove her again after it was discovered Mother's then-boyfriend and known drug user was present in the home. FCDJFS made its first motion for permanent custody due to allegations Mother failed to transport V.G. to medical appointments and counseling, fill V.G.'s prescriptions, adequately supervise V.G., and prevent V.G. from inappropriately touching her cousin. The juvenile court noted FCDJFS later withdrew this motion. The juvenile court further noted FCDJFS again attempted to place V.G.'s sibling in Mother's care, but later removed the child due to drug activity at the home. Mother's attempted suicide soon followed this removal. The juvenile court noted that throughout the pendency of this case Mother attended visitation, completed several aspects of her respective case plans, and was bonded with V.G.

{¶ 17} In consideration of the second statutory factor, the juvenile court found V.G. was ten years old at the time of its decision and the child expressed her desire to live with Mother. With respect to the third statutory factor, the juvenile court reviewed V.G.'s custodial history and found the child was adjudicated dependent, and that the child had been in the temporary custody of FCDJFS for 12 or more months of a consecutive 22-month period.

{¶ 18} In considering the fourth statutory factor, the juvenile court found V.G.'s need

for a legally secure placement cannot be achi3eved without a grant of permanent custody to FCDJFS. Specifically, the juvenile court found Mother has completed an extensive number of case plan services, but still has failed to demonstrate that placing the child in her care will be a legally secure placement. FCDJFS twice unsuccessfully attempted to return the children to Mother's care after the initial removal. The juvenile court found that each attempt demonstrated the same result; Mother poorly chose to place the children at risk by allowing known drug users to stay at the residence. The juvenile court noted Mother's conviction for child endangering in 2015 where the child or a sibling of the child was the victim of the offense. In 2016, Mother failed to transport V.G. to medical appointments and counseling sessions, and failed to fill her prescriptions.

{¶ 19} The juvenile court further found that the father abandoned V.G. and that the child cannot and should not be placed with Mother within a reasonable time. The juvenile court found Mother resided with her mother, whose residence is an inadequate placement due to a pending sex abuse case. The juvenile court noted Mother's desire to obtain her own residence, but that she had not done so at the time of the hearing. Mother completed many of her case plan objectives, but failed to obtain adequate housing, demonstrate she can meet V.G.'s basic needs, and did not rectify the behaviors and choices that led to the child's original removal.

{¶ 20} Based on these findings, the juvenile court determined by clear and convincing evidence that it was in the best interest of V.G. to grant permanent custody to FCDJFS. After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of V.G. is supported by clear and convincing evidence and not against the manifest weight of the evidence. Though Mother has made efforts to meet the requirements of her respective case plans and demonstrated a bond with V.G., there are compelling reasons to weigh the best interest factors in favor of permanent custody to FCDJFS.

{¶ 21} Despite exhaustive efforts by FCDJFS to reunify V.G. with Mother, Mother consistently made the same poor choices that led to V.G.'s original removal. While we acknowledge Mother's progress with her respective case plans, the evidence demonstrates the services she completed did not correct Mother's decision-making process, which placed V.G. at risk throughout the pendency of this case. "[I]t is well-settled that the completion of case plan services alone does not equate to, or necessitate a finding that the parent * * * ha[s] substantially remedied the conditions that caused the removal of the child from the home." *In re E.B.,* 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30. Rather, "the case plan is a means to the goal of reunification, but not the goal itself." *In re V.N.,* 12th Dist. Butler Nos. CA2016-12-229, CA2016-12-230, CA2016-12-235, and CA2016-12-236, 2017-Ohio-2586, ¶ 34.

{¶ 22} FCDJFS attempted to provide Mother additional time to work towards reunification by withdrawing the first motion for permanent custody, but Mother failed to take advantage of that opportunity. At the time of the permanent custody hearing, Mother failed to obtain suitable housing and employment, demonstrated consistency in making the same poor choices that led to the initial removal, and had attempted suicide following the most recent failed placement. V.G. is ten years old and needs to know whom she may rely on for her care and nurture. While V.G.'s current placement is not with a foster-to-adopt family, endlessly repeating the same failed approach of placing V.G. with Mother, only to be removed shortly thereafter, does not provide V.G. the permanency she needs. "[A] parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re A.W.,* 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23, citing *In re A.M.L.,* 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32. V.G. deserves a stable environment that is not plagued by the risk of dependency and illegal drug use. Therefore, the juvenile court's determination regarding the best interest of the child is

supported by clear and convincing evidence and not against the manifest weight of the evidence.

{¶ 23}  Accordingly, Mother's first assignment of error is overruled.

{¶ 24}  Assignment of Error No. 2:

{¶ 25}  THE TRIAL [COURT] ERRED BY NOT ISSUING A DISPOSITIONAL ORDER PRIOR TO THE DEADLINE THUS THE LEGAL CUSTODY OF CHILDREN SERVICES IS VOID AS THERE WAS NO FINDING OF TERMPORARY CUSTODY ON THE GROUNDS OF NEGLECT AND DEPENDENCY.

{¶ 26}  Assignment of Error No. 3:

{¶ 27}  THE TR[IA]L COURT ERRED IN NOT MAKING A NEGLECT OR DEPENDENCY FINDING WITH [SIC] IT GRANTED TEMPORARY CUSTODY OF THE CHILD TO THE AGENCY IN AUGUST OF 2016.

{¶ 28}  Mother contends FCDJFS first returned V.G. to her custody after sufficiently mitigating the original problems underlying the grant of temporary custody pursuant to R.C. 2151.353.  Mother further contends that the sunset date passed before FCDJFS filed for an extension of temporary custody pursuant R.C. 2151.415.  Therefore, Mother argues the juvenile court could no longer make further dispositional orders based on the original complaint.  Mother further argues the juvenile court erred by not adjudicating V.G. neglected or dependent a second time following the second removal.

{¶ 29}  Pursuant to R.C. 2151.353(G) and 2151.415(D)(1), a grant of temporary custody to a children services agency is limited to a period of two years; an initial period of one year, followed by up to two six-month extensions.  *In re A.F.*, 12th Dist. Butler No. CA2011-12-233, 2012-Ohio-2958, ¶ 26, analyzing *In re Young Children*, 76 Ohio St.3d 632 (1996).  The parent in *A.F.* posed the same arguments asserted by Mother in the present case.  In *A.F.*, we found the jurisdictional arguments posed by the parent do not apply when

a motion for permanent custody is filed within the two-year period and pending at the expiration of said period. *In re A.F.* at ¶ 27, citing R.C. 2151.415(A). In so doing, we held R.C. 2151.415(A) "specifically excludes cases in which a motion for permanent custody must be filed on the basis that a child has been in the temporary custody of an agency for 12 of 22 months." *Id.* "Thus, no motion regarding disposition at the end of temporary custody is required when the statute requires a permanent custody motion to be filed because a child has been in agency custody for 12 of 22 months, thus implying continued jurisdiction while the later motion is decided." *Id.* We further held that the parent failed to sufficiently remedy the conditions that led to the removal of the children thereby providing the juvenile court discretion to make a dispositional order in the best interest of the children. *Id.* at ¶ 28.

{¶ 30} We find Mother's arguments lack merit based on our holdings in *A.F.*, as FCDJFS moved for permanent custody because V.G. had been in its custody for 12 of 22 months. Furthermore, Mother failed to sufficiently remedy the conditions causing V.G.'s removal. As acknowledged above, throughout the pendency of this case, Mother has made measurable strides in meeting the objectives of her respective case plans. However, Mother failed to remedy the conditions causing V.G.'s removal. On two separate occasions, FCDJFS returned V.G. or V.G.'s siblings to Mother's care, only to be removed within approximately one month on the first occasion and two days on the second occasion. Each of the three times FCDJFS removed the children resulted from Mother's decision to permit known drug users in her home and around the children. Therefore, as we found above, Mother failed to sufficiently remedy the conditions causing V.G.'s removal. Thus, the juvenile court retained continuing jurisdiction to rule on the permanent custody motion.

{¶ 31} Mother further contends the juvenile court erred by not making a second finding of neglect or dependency following the second removal. FCDJFS returned V.G. to Mother's care for an approximate one-month period until the second removal in August 2016.

However, the case with FCDJFS remained pending and FCDJFS did not file a motion to terminate the temporary custody order. *See In re S.F.T.*, 12th Dist. Butler Nos. CA2010-02-043 thru CA2010-02-046, 2010-Ohio-3706, ¶ 26 (granting permanent custody in a case with one adjudication and a grant of temporary custody split by a brief return of custody to the parent). Therefore, the juvenile court did not err by not making a second dependency finding.

{¶ 32} Accordingly, Mother's second and third assignments of error are overruled.

{¶ 33} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.